IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISON

| | |
|---|---|
| JONATHAN MOORE and BRAD TRUITT,<br><br>    Plaintiffs,<br><br>v.<br><br>CHARLES CARROLL and INTEGRATED BIOMETRIC TECHNOLOGY,<br><br>    Defendants. | Case No.: 3:23-CV-00984<br><br>Consolidated with Case No.: 3:24-cv-00630<br><br>Judge Crenshaw, Jr.<br>Magistrate Judge Holmes |
| SUSAN AMICK and MICHAEL MCALLISTER,<br><br>    Plaintiffs,<br><br>v.<br><br>CHARLES CARROLL and INTEGRATED BIOMETRIC TECHNOLOGY,<br><br>    Defendants. | |

**THIRD JOINT MOTION FOR SETTLEMENT APPROVAL**

Plaintiffs Jonathan Moore, Brad Truitt, Susan Amick, and Michael McAllister (collectively, "Plaintiffs"), and Defendants Charles Carroll and Integrated Biometric Technology (collectively "Defendants") (together with Plaintiffs, the "Parties"), jointly move this Court for approval of their settlement in the above-captioned case. A copy of the Settlement Agreement is submitted on public record for the Court's review, attached hereto as **Exhibit 1**.

As discussed below, the Parties respectfully request that the Court grant this Joint Motion because the settlement is fair, adequate, and a reasonable resolution of the Parties' *bona* fide dispute of all claims which were or could have been asserted by Plaintiffs in this action, including claims brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as well as Plaintiffs' non-FLSA claims. In so granting this Joint Motion, the Parties request that this case and all claims asserted herein be dismissed with prejudice, with the Court retaining jurisdiction to enforce the agreement. Plaintiffs also seek what they believe is an award of reasonable attorneys' fees, costs, and expenses included in the agreed settlement amount.

## I. RELEVANT PROCEDURAL AND FACTUAL HISTORY

Plaintiffs Moore and Truitt filed their Complaint on September 13, 2023 [D.E. #1 and #23], followed by Plaintiffs Amick and McAllister, who filed similar claims in a separate action on May 20, 2024 [D.E. #40-2]. The Plaintiffs filed these actions on behalf of themselves, and the two actions were subsequently consolidated by the Court on May 20, 2024 [*See* Order, D.E. #8 in Case No. 3:24-cv-00630]. In their respective Complaints, Plaintiffs assert individual claims for unpaid salaries and other executive compensation under theories of breach of contract and common law, as well as lesser claims brought on behalf of themselves under the FLSA for alleged minimum wage and overtime violations. [*See generally* D.E. #23 and #40-2].

This case does not involve typical hourly wage employees, nor is it a class action. Rather, the relevant facts in this case are individualized and particular as to each of the Plaintiffs, who were former high-level executives of IBT, and each of whom was hired as an exempt, salaried VP in Spring 2021. Plaintiff Moore was hired at an annual salary of $180,000; Plaintiff Truitt at $160,000; Plaintiff Amick at $130,000; and Plaintiff McAllister at $250,000. While Plaintiffs were paid their salary through 2021, they allege that in or around January 2022 through the Spring of

2022 that they stopped receiving compensation despite continuing to work full-time in their executive roles. [*See generally Id.*]. Additionally, Plaintiffs Moore, Truitt, and Amick also allege that they made certain investments into IBT, for which they did not receive any returns [*Id.*].

Based on these allegations, Plaintiffs seek recovery not only for minimum wage violations under the FLSA, but primarily for unpaid salary wages, bonuses, severance, and other executive compensation they contend are owed under their respective employment agreements. Collectively, Plaintiffs estimate they are owed well over $250,000 in unpaid contractual salary alone, in addition to alleged damages for bonuses, severance, and equity investments. While Plaintiffs included FLSA claims in their pleadings, the alleged minimum wage damages under the FLSA make up only a small, baseline, portion of the overall damages at issue.

Defendants dispute that any FLSA violations willfully occurred, maintain that the compensation Plaintiffs received exceeded the minimum wage, that Plaintiffs were aware of IBT's financial difficulties as a new startup company. According to Defendants, IBT was ultimately forced to cease business operations after it failed to secure anticipated contract work, leaving the company without sufficient capital to continue. It went out of business in 2022, shortly after Plaintiffs terminated their employment.

After Defendants filed an initial Motion to Dismiss against Plaintiffs Moore and Truitt, Plaintiffs Moore and Truitt filed an Amended Complaint, dropping their state wage violation claims. [*See* D.E. #27-1, PageID# 159-160]. Defendants then filed a renewed Motion to Dismiss against Plaintiffs Moore and Truitt. [*Id.*]. Following the consolidation of cases, Defendants also filed a similar Motion to Dismiss against Plaintiffs Amick and McAllister. [*See* D.E. #40]. After the Parties fully briefed the Motions and appeared for a hearing on January 8, 2025, the Court entered an Order granting Defendants' Motion in part: (1) dismissing Plaintiffs' conversion claims,

and (2) permitting Plaintiffs' securities-related claims to proceed to the extent they allege Defendants failed to register securities under the Tennessee Securities Act, but dismissing the securities fraud claims in all other respects. [D.E. #45].

In its January 8, 2025 Order, the Court also encouraged the Parties to engage in another good faith attempt to resolve this case. [*Id.*]. After many weeks of negotiations between the Parties, through their respective counsel, the Parties reached an agreement to settle all of Plaintiffs' claims in this executive compensation dispute. Following rulings on the Parties' first and second joint motions seeking approval of the settlement, and the Court expressing concerns about public access to the settlement document, the Parties now seek the Court's approval of the proposed settlement and dismissal of this action by submitting their Settlement Agreement on the public record as **Exhibit 1** hereto.

## II. TERMS OF THE PROPOSED SETTLEMENT

As detailed in the Settlement Agreement, Defendants will pay a gross sum of $175,000 total, which includes both the amounts to be distributed equally among the Plaintiffs and the portion allocated for their attorneys' fees and litigation costs. Of the gross settlement amount, $105,000.00 is allocated to be distributed to the four individual Plaintiffs equally, for net settlement award of $26,250.00 to each of the Plaintiffs; and based on the agreed contingency fee of the Plaintiffs with their counsel, $70,000.00 of the gross settlement amount is allocated for Plaintiffs' counsel. The payment schedule is set forth in Section 4 of the Settlement Agreement.

Importantly, the total settlement amount was determined based on the full scope of claims and defenses asserted in this case—including substantial contract claims for unpaid executive compensation—not solely on the lesser and more limited FLSA claims. That is, the Parties compromised to resolve their disputed claims and defenses by arriving at amounts that exceed

Plaintiffs' minimum wage and overtime claims during the period of employment at issue, taking into account the claims and amounts that may or may not have been recoverable for Plaintiffs' breach of contract and unpaid executive compensation claims. The amount arrived at also takes into account Plaintiffs' attorneys' fees and costs for litigation. Parties agreed the gross sum would be split equally between each of the Plaintiffs, resulting in each Plaintiff receiving a net sum of approximately $26,250.00 after attorneys' fees and costs.

In consideration of Defendants' payments, Plaintiffs have agreed to dismiss all claims that were or could have been asserted in this case with prejudice. Further, Plaintiffs have agreed to release and discharge Defendants (and related individuals and entities as described in the settlement agreement) from, among other things, all known and unknown claims for breach of contract, wages, overtime compensation, liquidated damages, penalties, interest, and attorneys' fees under the FLSA and those arising from their former employment and contractual relationship with Defendants. **The Parties also expressly agree that this Court shall retain continuing jurisdiction over enforcement of the settlement agreement if such a dispute later arises.**

### III. BASIS FOR COURT APPROVAL

This matter arises from a dispute between four former VP-level executive employees and their former employer concerning alleged unpaid executive compensation during a portion of the Plaintiffs' respective periods of employment, including salary, bonuses, severance, and other contractual entitlements, with only a limited minimum wage component asserted under the FLSA. Although the gravamen of Plaintiffs' claims, and the settlement, are based primarily on unpaid executive compensation, including salary, bonuses, severance, and other contractual claims, Plaintiffs also included a baseline theory of relief under the FLSA.

To ensure compliance with the FLSA's minimum wage provisions, district courts have

5

Case 3:23-cv-00984    Document 59    Filed 07/18/25    Page 5 of 17 PageID #: 491

regularly found that the FLSA context favors court approval of settlements. *Henderson v. Sonic Drive In, Memphis, Poplar*, No. 2:20-CV-2604-MSN-TMP, 2022 WL 22896003, at *1 (W.D. Tenn. Feb. 18, 2022). *See also Nader v. Springs Window Fashions, LLC*, 660 F. Supp. 3d 625, 627-28 (E.D. Mich. 2023) (noting that while the Sixth Circuit has not explicitly required court approval for FLSA settlement agreements, courts in this circuit have consistently held that FLSA settlements require approval by either the Department of Labor or a court). In detailing the circumstances justifying approval of an FLSA settlement in a litigation context, the following is instructive:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.

*Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982).

Before approving a private FLSA settlement, the district court must "scrutinize the proposed settlement for fairness and determine whether the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Nader*, 660 F. Supp. 3d at 627; *Finnegan v. Dillon Transportation, LLC,* No. 3:21-CV-604, 2022 WL 1144128, at *1 (M.D. Tenn. Apr. 18, 2022) (citing *Lynn's Food Stores,* 679 F.2d at 1355); *accord Lusane v. Mapco Express, Inc.*, No. 3:20-00665, 2022 U.S. Dist. LEXIS 59870 (M.D. Tenn. Mar. 31, 2022); *Wills v. Cellular Sales of Tenn., LLC*, No. 12-391, 2014 WL 8251539, at *1 (E.D. Tenn. Aug. 18, 2014); *Simmons v. Mathis Tire & Auto Serv., Inc.*, No. 13- 2875, 2015 WL 5008220, at *1 (W.D. Tenn. Aug. 20, 2015). "In this analysis, the Court examines three factors: (1) whether the settlement was achieved in an

6

adversarial context, (2) whether the plaintiffs were protected by attorneys who can protect their rights and (3) whether the settlement reflects a fair and reasonable compromise of the issues in dispute." *Taylor v. Unilever Mfg. (U.S.), Inc.*, No. 2:20-cv-02803- SHL-atc, 2022 WL 18142390, at *2 (W.D. Tenn. Oct. 14, 2022) (citing *Lynn's Food Stores*, 679 F.2d at 1354).

As to the fairness and reasonableness of the proposed settlement of an individual FLSA claim, courts may consider several factors, including: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *See, e.g., Nader*, 660 F. Supp. 3d at 627; *accord Henderson*, 2022 WL 22896003 at *2.

A district court "may choose to consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Redington v. Goodyear Tire & Rubber Co.*, No. 5:07CV1999, 2008 WL 3981461, *11 (N.D. Ohio Aug. 22, 2008) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992)); *accord* Henderson, 2022 WL 22896003 at *2. Nevertheless, these factors may help to demonstrate that the parties have come to a reasonable compromise of a bona fide dispute, the existence of which "serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA." *Estes v. Vanderpool Constr. & Roofing, Inc.*, No. 2:17-cv-58, 2018 WL 3910999, at *2 (E.D. Tenn. July 30, 2018) (quoting *Edwards v. City of Mansfield*, No. 1:15-CV-959, 2016 WL 2853619, at *3 (N.D. Ohio May 16, 2016)); *accord Ochs v. Modern Design, Inc.*, No. 14-635, 2014 WL 4983674, at *2 (N.D. Ohio Oct. 6, 2014).

Ultimately, when it appears that a settlement "reflect[s] a reasonable compromise over

7

issues, such as FLSA coverage or computation of back wages[] that are actually in dispute," the Court should "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354.  Additionally, a court presiding over an FLSA suit "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

A. **A *Bona Fide* Dispute Exists.**

A *bona fide* dispute exists in this case. Essentially, Plaintiffs claim they were not paid for their labor—either their executive salary compensation or minimum wage—during a 4-month period of their employment and that they were fraudulently induced to invest in IBT. Plaintiffs maintain that Defendants' failure to pay their salary during that period constitutes a breach of contract, or *at a minimum*, a violation of the applicable minimum wage and overtime laws. Plaintiffs contend that Defendants willfully and/or fraudulently failed to pay Defendants and made misrepresentations about IBT's financial conditions.

Defendants dispute the allegations and characterization of claims brought by Plaintiffs. Without waiver of any defenses, Defendants dispute that IBT is a covered enterprise under the FLSA and deny that any minimum wage or overtime violation could reasonably be found, particularly insofar as Plaintiffs allege bad faith or willfulness, and contend that such claims are barred by the statute of limitations. What is more, because Plaintiffs were salaried employees, there are no records of any alleged hours worked. Defendants argue that any contractual claims that Plaintiffs have, if any, cannot be asserted against Mr. Carroll individually and can only be brought against IBT, which ceased business operations several years ago. As a startup business in a competitive industry, Defendants maintain that Plaintiffs were aware of IBT's financial condition and that profitability depended solely on Plaintiffs' ability to successfully bid on contracts.

8

### B. Basis and Methodology for Settlement

The agreed settlement amount reflects a negotiated resolution of several claims asserted by Plaintiffs, only a small portion of which actually fall under the FLSA. This is not a traditional FLSA case involving non-exempt hourly workers or widespread wage-and-hour violations. Rather, Plaintiffs are former high-level executives who were employed by IBT in 2021 as salaried, exempt, VP-level employees, each with distinct, individualized employment arrangements and responsibilities. The respective annual base salaries were alleged as follows: Plaintiff Moore: $180,000; Plaintiff Truitt: $160,000; Plaintiff Amick: $130,000; and Plaintiff McAllister: $250,000. Through most of their employment, Plaintiffs were paid their respective salaries, but allege that IBT ceased paying them in or around January 2022 through Spring 2022 when their employment ended.

The agreed settlement amount was the product of arms-length negotiations that took into account the full range of Plaintiffs' asserted claims (and Defendants' defenses), including those for unpaid salary, bonuses, severance, and other compensation that fall outside the scope of the FLSA—which are the gravamen of Plaintiffs' claims. As set forth in the Complaint(s), Plaintiffs assert breach of contract claims arising from IBTs alleged failure to pay salary and other executive compensation for a period of approximately no more than eighteen (18) or nineteen (19) weeks. The estimated salary-based damages (excluding claims for bonuses, severance, and potential securities claims) for salary payments allegedly owed during that 18 or 19-week period are approximately as follows: Plaintiff Moore: $58,846.18; Plaintiff Truitt: $52,307.64; Plaintiff Amick: $60,000.00; and Plaintiff McAllister: $83,461.59. Collectively, these alleged unpaid salary amounts exceed $250,000, plus additional compensatory damages that Plaintiffs claim is owed for unpaid bonuses, severance benefits, and equity interests. Accordingly, the

overwhelming majority of the damages sought by Plaintiffs in this action are for breach of contract.

In contrast, the estimated damages under the FLSA are substantially lower. Plaintiffs have alleged that they worked in excess of forty hours per week during the 18 or 19-week period in which they received no compensation. However, because Plaintiffs were classified as exempt and received a salary during the first part of their employment period, there are no contemporaneous time records reflecting their hours worked. Nonetheless, applying a conservative estimate based solely on minimum wage damages under the FLSA for that period, Plaintiffs collectively estimate approximately between $20,880.00 to $22,040.00 in backpay damages total under the FLSA, or approximately $5,220.00 to $5,510.00, or less, per Plaintiff.[1] If Plaintiffs were to prevail on their claims and establish willfulness and entitlement to liquidated damages—which Defendants dispute—the total estimated recovery under the FLSA could be approximately $10,440.00 to $11,020.00, or less, per Plaintiff.

While settlement of non-FLSA claims does not require judicial approval, illustration of Plaintiffs' non-FLSA claims compared to that of the FLSA provides context for the parties' methodology and negotiations. This is particularly true because, while the FLSA claims have been asserted against both Defendants, the non-FLSA claims only afford potential relief against IBT, which has been dissolved for several years and has no ongoing operations, employees, or assets. The net settlement amount received by each of the Plaintiffs under the proposed settlement ($26,250.00 each) far exceeds the estimated FLSA backpay and liquidated damages even under a best-case scenario for the Plaintiffs. Thus, proceeding with litigation—along with the litigation risks faced by the parties and the anticipated burdens and expenses in establishing their respective

---

[1] Estimate calculated as follows: ($7.25 per hour x 40 hours per week) x 18 weeks = $5,220.00. Or for 19 weeks = $5,510.

claims and defenses—would offer little upside as to the possible recovery that Plaintiffs may obtain when compared to the proposed settlement.

The proposed settlement provides Plaintiffs with meaningful recovery, while also accounting for the risks and costs of continued litigation over all of Plaintiffs' disputed contract claims. Accordingly, the Parties submit that this context demonstrates the fairness and reasonableness of the proposed settlement.

### C. The Settlement is Fair and Reasonable.

In addition to resolving a *bona fide* dispute between the Parties, the proposed settlement is fair and reasonable based on the applicable factors and should be approved. The proposed settlement arises out of an action for alleged unpaid executive compensation, including salary, bonuses, severance, and other contract amounts, as well as, to a lesser extent, unpaid minimum wage and overtime under the FLSA. As explained above, there is a *bona fide* dispute as to Plaintiffs' FLSA and non-FLSA claims. Based on the unpredictable nature and risks of this type of litigation, it is possible that Plaintiffs could recover less than the settled amount or nothing at all as to their claims. Accordingly, Plaintiffs believe such a compromise is reasonable under the circumstances and in light of the defenses and risks of further litigating this matter.

There is no fraud or collusion between the Parties. This settlement was reached as a result of arm's- length negotiations between the Parties through experienced attorneys based upon information exchanged sufficient for counsel and their clients to fully assess their respective positions and interests. *See West v. Emeritus Corp.*, No. 3:15-cv-437, 2017 U.S. Dist. LEXIS 104269 (M.D. Tenn. Jul. 5, 2017) (considering the risk of fraud or collusion between the parties in determining whether to approve an FLSA settlement and concluding that because the parties, who were represented by experienced wage and hour counsel, engaged in arms-length litigation

11

Case 3:23-cv-00984   Document 59   Filed 07/18/25   Page 11 of 17 PageID #: 497

and negotiations over significantly contested issues for six months to achieve a settlement, there was "little to no risk the settlement was the result of fraud or collusion").

Plaintiffs are represented by counsel experienced in handling employment contract matters and wage and hour actions. Plaintiffs' counsel has the experience to assess the risks of continued litigation and benefits of settlement and has done so with their clients in this case. Plaintiffs' counsel also has an established practice representing employees with claims against employers similar to the claims asserted in this case. Defendants' counsel are likewise experienced in defending similar claims and handling employment matters. Counsel for the Parties have advised their respective clients regarding the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses, particularly in light of the litigation risks faced by the parties. Accordingly, the Parties have reached a compromise of this bona fide dispute and request judicial approval based on the recommendations of their respective counsel after having considered the seriousness of the litigation risks and other relevant factors. Courts routinely give those recommendations weight. See *Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as an indication of fairness).

The range of possible recovery in this case was uncertain. As noted above, the Plaintiffs were at risk of recovering little or nothing at all, even if ultimately successful in trial—particularly when compared to the amounts agreed to in the proposed settlement. The estimated value of Plaintiffs' FLSA claims is between $5,220.00 to $5,510.00 per Plaintiff for backpay, based on the minimum hourly wage for 40 hours per week over an 18 or 19-week period. Under the FLSA, Plaintiffs would likely receive no more than $10,440.00 to $11,020.00 each for backpay *and* liquidated damages combined if successful. Critically, the net amount allocated to Plaintiffs is

$105,000.00 ($26,250.00 each), which significantly exceeds the estimated value of their FLSA claims and exceeds the maximum amount they would have recovered under the FLSA even assuming complete success on their claims. Plaintiffs will receive greater relief than what is afforded under the FLSA, and for this reason alone the proposed settlement is fair and reasonable under the FLSA.

The Parties have exchanged information sufficient for Parties and their counsel to: (i) collect, obtain, and review evidence; (ii) evaluate their claims and defenses; (iii) understand the scope of potential damages; and (iv) engage in negotiations with the mutual understanding that continuing toward further discovery, dispositive motion practice, or trial would be a costly and uncertain undertaking. The significant amount of information shared between the Parties in this matter prior to settlement should weigh in favor of settlement approval. *See Brown v. Henley Propane, Inc.,* No. 4:20-CV-7, 2020 WL 4597077, at *2 (E.D. Tenn. Aug. 11, 2020).

Finally, the complexity, expense, and likely duration of the litigation should a settlement not have been reached weighs heavily in favor of finding that this settlement is fair and reasonable. As noted above, some of Plaintiffs' claims were dismissed by the Court and/or face substantial barriers. The settlement avoids the necessity for further litigation as to each Plaintiff and the numerous claims asserted, as well as the cost of discovery, motions, and further hearings. The settlement eliminates the inherent risks both sides would face if this case were to continue. Under these circumstances, the settlement is fair, reasonable, and adequate for Plaintiffs, and should be approved.

### D. The Parties Agree That Attorneys' Fees and Costs Are Reasonable.

The proposed settlement fairly and reasonably resolves Plaintiffs' *bona fide* executive compensation and wage disputes. The FLSA, in particular, permits plaintiffs to recover their

attorneys' fees and costs under the statute's fee-shifting provision, and federal courts have found that a contingency fee between 33 and 40 percent is reasonable. *See* 29 U.S.C. § 216(b); *Benoskie v. Kerry Foods, Inc.*, No. 19-684, 2020 WL 5769488, at *3 (E.D. Wis. Sept. 28, 2020) (noting that most suits for damages are handled on plaintiffs' side on a contingent fee basis typically between 33 and 40 percent); *Brittmon v. Upreach LLC*, No. 2:17-CV-219, 2018 WL 7889855 (S.D. Ohio Nov. 8, 2018) (approving attorneys' fees of 40%); *Fabi v. Carter-Jones Cos.*, No. 2:21-CV-11727, 2022 WL 3010887, at *3 (E.D. Mich. July 29, 2022) (approving attorney's fee award of "about half of the total settlement" when settlement applied to only the named plaintiff). Consistent with the FLSA, under the proposed settlement agreement the Parties agree that Defendants will pay an amount that accounts for Plaintiffs' non-FLSA breach of contract claims and the attorneys' fees and costs of Plaintiffs' counsel recoverable under the FLSA.

Here, the services were undertaken on a 40% contingency basis, which Plaintiffs expressly agreed to when they each hired Plaintiffs' counsel. Therefore, the proposed amount for attorneys' fees and costs is $70,000.00 total, which is 40% of the total settlement amount. The settled amount for attorneys' fees and costs is equal to the amount recoverable under the contingency agreement and less than the lodestar amount at the time of settlement. Plaintiffs' counsel paid two separate filing fees with the federal court and spent considerable time pleading Plaintiffs' claims, including by investigating and drafting two complaints and an amended complaint. Plaintiffs' counsel also spent a significant amount of time engaging in motion practice by responding to Defendants' two complex dispositive motions, and preparing for a court hearing on the same. Additional attorney time has been spent negotiating and preparing the proposed settlement for the court's review, as well as appearing for court hearings and case management conferences.

The proposed settlement reflects the value of experienced counsel received throughout the

litigation, negotiation, and settlement process on a variety of disputed issues of law given the *bona fide* disputes between the four Plaintiffs and two Defendants as to liability, limitations periods, and the potential recoveries at issue.

IV. **CONCLUSION**

The proposed settlement is fair and reasonable under the circumstances and warrants approval. It resolves a bona fide dispute over FLSA and non-FLSA claims and is the result of arm's-length negotiations between experienced counsel. The settlement is not the product of fraud, and it provides meaningful relief to Plaintiffs that exceeds what could have been recovered under the FLSA, taking into account the full scope of claims and defenses. The proposed settlement also reflects careful consideration of the risks and burdens of continued litigation, including the uncertainty of proving liability and damages, the complexity of Plaintiffs' hybrid FLSA and contract-based claims, and the time and expense the parties would incur if the case proceeded through further discovery and trial. Accordingly, the Parties desire to resolve this executive compensation case by way of a negotiated settlement payment by Defendants in exchange for the release of claims by Plaintiffs and a dismissal of this Lawsuit, with prejudice, to avoid the time and expense inherent in continued litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("Thus, when the parties [to the litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.").

For all these reasons, the Parties respectfully request this Motion be **GRANTED** and move the Court for an order **APPROVING** the proposed Settlement Agreement (Exhibit 1) in full, including the consummation of its terms and provisions and Plaintiffs' counsel's request for attorneys' fees and expenses, and **DISMISSING** this case *with prejudice*, provided that the Court

retains continuing and ongoing jurisdiction over enforcement of the Settlement Agreement.

                                    Respectfully submitted,

*/s/ Colton L. Adams*
Colton L. Adams (TN Bar No. 038084)
**MERIDIAN LAW, PLLC**
5141 Virginia Way, Ste 320
Brentwood, TN 37027
Tel: (615) 229-7499
Fax: (615) 229-7498
colton.adams@meridian.law
*Counsel for Defendants*

*/s/David Weatherman w/perm. CLA*
David Weatherman (TN Bar No. 29446)
**THE WEATHERMAN FIRM**
256 Seaboard Lane, Suite E105
Franklin, TN 37067
T: 615-538-7555
david@theweathermanfirm.com
*Counsel for Plaintiffs*

*/s/ Daniel E. Arciniegas w/perm. CLA*
Daniel E. Arciniegas (TN Bar No. 35853)
**ARCINIEGAS LAW**
256 Seaboard Lane, Suite E105
Franklin, TN 37067
T: 629-777-5889
daniel@attorneydaniel.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing **Third Joint Motion for Settlement Approval** has been filed via the Court's CM/ECF system on July 18, 2025, which will automatically send a copy of the filing to:

David Weatherman
(TN Bar No. 29446)
**THE WEATHERMAN FIRM**
256 Seaboard Lane, Suite E105
Franklin, TN 37067
T: 615-538-7555
david@theweathermanfirm.com
*Counsel for Plaintiffs*

Daniel E. Arciniegas
(TN Bar No. 35853)
**ARCINIEGAS LAW**
256 Seaboard Lane, Suite E105
Franklin, TN 37067
T: 629-777-5889
daniel@attorneydaniel.com
*Counsel for Plaintiffs*

 /s/ Colton L. Adams
 Colton L. Adams